# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ZACH HILLESHEIM,<br><br>               Plaintiff,<br><br>vs.<br><br>O. J.'S CAFE, INC.,<br><br>               Defendant. | 8:17CV239<br><br>MEMORANDUM<br>& ORDER |

This matter is before the Court on the Motion to Exclude, ECF No. 42, filed by Plaintiff Zach Hillesheim. For the reasons stated below, the Motion will be denied.

## BACKGROUND

On June 29, 2018, Defendant, O.J.'s Cafe, Inc. (O.J.'s Cafe), filed a Motion for Summary Judgment, ECF No. 34. In support of that Motion, O.J.'s Cafe asserts[1] that Hillesheim's claim is moot because O.J.'s Cafe retrofitted its premises to eliminate any conditions that allegedly violated ADA accessibility requirements. In support of O.J.'s Cafe's contention that Hillesheim's claim is moot, O.J.'s Cafe submitted the Supplemental Expert Report of Larry Fleming, ECF No. 36-7. Hillesheim seeks to exclude the Supplemental Report and related testimony under Federal Rule of Evidence 702 on the basis that it is not the product of reliable principles and methods.

O.J.'s Cafe argues that the Court should not exclude Fleming's Supplemental Report or testimony for purposes of O.J.'s Cafe's Motion for Summary Judgment because

---

[1] O.J.'s Cafe also argues in the Motion for Summary Judgment that Hillesheim is unable to show he suffered an injury-in-fact and that Hillesheim lacks evidence that O.J.'s Cafe took adverse action against him based upon his alleged disability.

Hillesheim failed to depose Fleming regarding his methodology after Fleming issued his initial report, using the same methodology. O.J.'s Cafe also cites Fleming's vast experience and argues that his methodology is reliable even if it does not appear to be in strict compliance with methodology contained in the ADA Accessibility Survey Forms and Instructions ("ADA Instructions") published by the U.S. Department of Justice.

## STANDARD OF REVIEW

Federal Rule of Evidence 702, which governs the admissibility of expert testimony, states:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if . . . (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The district court possesses a gatekeeping function in evaluating the reliability of expert testimony. *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 685 (8th Cir. 2001). "The proponent of the expert testimony must prove its admissibility by a preponderance of the evidence." *Id.* (citing *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 592 (1993)).

In assessing reliability, the Court should consider the factors outlined in *Daubert* including whether the proposed expert's theory, methodology or technique: 1) can be and has been tested; 2) has been subjected to peer review and publication; 3) has a known or potential rate of error; and 4) is generally accepted by the relevant community. *Bland v. Verizon Wireless, (VAW) L.L.C.*, 538 F.3d 893, 896 (8th Cir. 2008) (citing *Ahlberg v. Chrysler Corp.*, 481 F.3d 630, 635 (8th Cir. 2007). "[A] trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help

determine that testimony's reliability." *Kumho Tire Co., v. Carmichael*, 526 U.S. 137, 141 (1999). (emphasis in original). This list of factors is not exclusive, and this Court is allowed "great flexibility" in its analysis. *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1082 (8th Cir. 1999) (citing *Daubert*, 509 U.S. at 593, 594). The reliability inquiry is "designed to 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

## DISCUSSION

Fleming's initial report and Supplemental Report make clear that he only addressed the areas identified by Hillesheim as non-compliant with ADA Accessibility Guidelines ("ADAAG") 1991 or 2010. Fleming Supp. R., ECF No. 36-7, Page Id. 149, 155; Fleming Expert R., ECF No. 41-1, Page ID 283. In his Supplemental Report, Fleming concluded that O.J.'s Cafe's premises are now ADA compliant.

Hillesheim argues Fleming's conclusions in the Supplemental Report were not the product of reasonable methods because the Supplemental Report does not show he used the methodology contained in the ADA Instructions. Pl.'s Mem., ECF No. 43, Page ID 293-94. Specifically, Hillesheim contends that nothing in the Supplemental Report suggests Fleming took cross-slope measurements, or sought out the steepest slopes, or cleared away rocks or debris prior to taking measurements.

The record shows that Fleming is an architect with over thirty years of experience in the field of ADA accessibility. Fleming Decl., ECF No. 36-3, Page ID 115. He stated that at the time of his initial inspection, he found slopes exceeding 2% in O.J.'s Cafe's

3

parking area and access aisles in violation of ADA Accessibility Guidelines ("ADAAG") [1991] 4.6.3. Fleming Expert R., ECF 41-4, Page ID 283. His opinions in his Supplemental Report were based on his review of O.J.'s Cafe's retrofits after his initial August 8, 2017, inspection. Fleming Supp. R., ECF No. 36-7, Page ID 149. His Supplemental Report stated that he "found the accessible parking space and access aisles had slopes that did not exceed 2%." *Id.* Fleming stated it is his opinion that the allegedly non-compliant conditions cited by Hillesheim in his Complaint and expert's report have been fully retrofitted and that "[a]ll of those elements now comply with the requirements of ADAAG." Fleming Supp. R., ECF No. 36-7, Page ID 155. Fleming's photographs make it clear that, during his June 20, 2018, inspection, he took measurements of the parking area, access aisles, and ramp[2], using a digital level. Fleming Supp. R., ECF No. 36-7, Page ID 150-54. The ADA Instructions referenced by Hillesheim state that the most effective way to measure slope is to use a digital level. ADA Instructions, ECF No. 44-1, Page ID 305. The inclusion of this method in the ADA Instructions shows that determining slope by taking digital measurements has been peer reviewed, published, has an acceptable rate of error, and is a generally accepted method of determining slope. Also, the reliability of this method easily can be tested by Hillesheim who can use his own expert to take digital

---

[2] Hillesheim's own expert's report included measurements of the cross slopes on the curb ramp, the steepest being 0.7 degrees, and did not include photographs of these measurements because no ADAAG violation was identified. Hansmeier Decl., ECF No. 36-6, Page ID 147. Hillesheim's expert did note steep slopes on the ramp flares. Hansmeier Decl., ECF No. 36-6, Page 147. However, after O.J.'s Cafe's remediation efforts, the ramp no longer had flares on either side. Fleming Supp. R., ECF No. 36-7, Page ID 153. Fleming had no reason to measure the cross slopes on the ramp or include any cross-slope measurements, because cross slope of the ramp was not a condition identified by Hillesheim's expert as noncompliant.

measurements of the slopes to refute Fleming's findings and conclusions if Hillesheim contends the slopes remain non-compliant.

The fact that an expert may have neglected to perform a specific test or measurement, or that other experts use more data, may affect the weight given to an expert's testimony, but does not render the expert's opinion admissible. *See Argonaut Ins. Co. v. Samsung Heavy Indus. Co.*, 929 F. Supp.2d 159, 167 (N.D. N.Y. 2013) (Expert's possible failure to follow ardently and strictly each step of the generally accepted standards for fire investigations, did not lead to exclusion of the opinion or render it less reliable.).

> As a general rule, the factual basis of an expert opinion goes to credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination. Only if the expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded.

*Bonner v. ISP Techs., Inc.*, 259 F.3d 924, 929-30 (8th Cir. 2001) (quoting *Hose v. Chicago Northwestern Transp. Co.* 70 F.3d 968, 974 (8th Cir. 1996)).

Hillesheim notes that he did not depose Fleming prior to the issuance of the Supplemental Report because Fleming's conclusions in his initial report were consistent with the conclusions of Hillesheim's own expert. After Hillesheim's own expert has had an opportunity to conduct a supplemental site inspection pursuant to the Memorandum and Order on Hillesheim's Motion to Strike, ECF No. 58, Hillesheim may seek leave of Court to depose Fleming regarding the content of the Supplemental Report.

Accordingly,

IT IS ORDERED:

Plaintiff Hillesheim's Motion to Exclude, ECF No. 42, is denied, without prejudice to objections at trial.

Dated this 6th day of September, 2018.

> BY THE COURT:
>
> s/Laurie Smith Camp
> Chief United States District Judge